1 | Todd J. Roberts, Esq. SBN 181945
  | LAW OFFICES OF TODD J. ROBERTS
2 | 16601 Ventura Boulevard
  | Fourth Floor
3 | Encino, CA 91436
  | Tel. (818) 906.8000
4 | Fax (818) 906.8099

5 | Attorney for Debtor/Movant

### UNITED STATES BANKRUPTCY COURT

### CENTRAL DISTRICT OF CALIFORNIA

### SAN FERNANDO VALLEY DIVISION

Chapter 13

In re ) Case No. SV 09-12118 KT
)
LEONARDA G AGUILAR, ) NOTICE OF DEBTOR'S MOTION AND
) MOTION FOR VALUATION OF
) SECURITY; DETERMINATION OF
) SECURED STATUS AND AVOIDANCE OF
) LIEN AND MODIFICATION OF RIGHTS
) OF JUNIOR LIEN HOLDER,
) COUNTRYWIDE HOME LOAN, INC.,
) ITS ASSIGNEES, TRANSFEREES
) AND/OR SUBSEQUENT SUCCESSOR(S)
) IN INTEREST, (11 U.S.C.
) §§506(a) AND 1322(b); FRBP
) 3012); MEMORANDUM OF POINTS
) AUTHORITIES; AND DECLARATIONS
) OF DEBTOR, LEONARDA AGUILAR
) AND CALIFORNIA LICENSED REAL
) ESTATE APPRAISER, SHAHRAM
) FAHIMDEJBAN IN SUPPORT
) THEREOF.
)
) DATE:    June 2, 2009
) TIME:    9:00 A.M.
) PLACE:   Courtroom 301
)          21041 Burbank Blvd.
Debtor/Movant. )          Woodland Hills, CA
_____)

TO: THE HONORABLE KATHLEEN THOMPSON, UNITED STATES BANKRUPTCY

JUDGE; ELIZABETH ROJAS, CHAPTER 13 TRUSTEE; COUNTRYWIDE HOME LOANS,

INC., (SECOND/JUNIOR DEED OF TRUST), ITS ASSIGNEES, TRANSFEREES

AND/OR SUCCESSOR(S) IN INTEREST, IF ANY, RESPONDENT; AND ALL OTHER

**PARTIES OF INTEREST:**

**PLEASE TAKE NOTICE THAT** at the above date, time and place, the Debtor, Leonarda Aguilar, by and through counsel, Todd J. Roberts, will move the Court for a valuation of security under Rule 3012 of the Federal Rules of Bankruptcy, a determination of secured status under 11 U.S.C. §506(a) and avoidance of junior lien and modification of the rights of lien holder under 11 U.S.C. §1322(b)(2).

This Motion is based upon this Notice of Motion, the attached memorandum of points and authorities, the case file, the attached declarations of Leonarda Aguilar, debtor, (the "debtor") and Shahram Fahimdejban, California licensed real estate appraiser, (the "appraiser") and any such other evidence as may be presented at or before the hearing.

**Pursuant to Local Rule 9013-1(a)(7), any response to this motion shall be filed with the Clerk of the Court and served on all interested parties no later than fourteen (14) days prior to the above hearing date. Failure to do so may be deemed as a waiver of the objection to the foregoing.**

Dated:    May 8, 2009

Respectfully submitted by,

LAW OFFICES OF TODD J. ROBERTS

By: _____
Todd J. Roberts
Attorney for Debtor/Movant

-2-

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

### STATEMENT OF FACTS

1. The instant bankruptcy case was commenced on February 26, 2009, by the filing of a Chapter 13 voluntary petition by Leonarda Aguilar, (the "debtor").

2. One of the main assets of the estate and the subject matter of this motion is the debtor's primary residence, a single family residence located at 13781 Eldridge Avenue, Sylmar, CA 91342 (the "subject property").

3. The debtor acquired the subject property in or around April, 2006.

4. Upon commencement of the instant case, the debtor was indebted to Ocwen Loan Servicing, LLC a (hereinafter "Ocwen") the beneficial holder of a note secured by a first deed of trust. The first position note held by Ocwen, as of the filing date of February 26, 2009 has an outstanding principal balance of $990,732.14 inclusive of interest and late charges as evidenced by the most recent billing statement ion debtor's possession dated December 17, 2008. Please see Aguilar Declaration **Exhibit "A"**, attached hereto.

5. The second position note secured by a second deed of trust is held by Countrywide Home Loans, Inc., (hereinafter "Respondent") and has an outstanding principal balance inclusive of late charges and accrued interest of $119,969.76 as evidenced by its most recent billing statement in the debtor's possession dated February 20, 2009. Please see Aguilar Declaration, **Exhibit "B"**, attached hereto. The first and second position lenders are and

-3-

have been at all times secured by legally recorded Deeds of Trust recorded against the subject property.

5. The debtor asserts and the attached evidence illustrates that the fair market value of the subject property is merely $575,000.00, which is approximately $415,000.00 *less* than the total payoff balanced owed to Ocwen in the sum of approximately $990,000.00, as first trust deed holder. See Aquilar Declaration, **Exhibit "A."** See also, Fahimdejban Declaration, **Exhibit "A"** establishing the fair market value of the subject property as $575,000.00 as of March 12, 2009.

6. Valuation of the security at this time is necessary for the purpose of extinguishing the second trust deed holder's junior lien asserted by claimant, Countrywide Home Loans (Respondent), and modifying said claimant's rights.

### III.

### LEGAL DISCUSSION

A. <u>Debtor seeks a determination of the value of the property.</u>

Rule 1001 of the Federal Rules of Bankruptcy Procedure states that "[t]hese rules shall be construed to secure the just, speedy, and inexpensive determination of every case and proceeding." The objective of "expeditious and economical administration" of cases under the Bankruptcy Code has frequently been recognized by the courts to be "a chief purpose of the bankruptcy laws." See Katchen v. Land, 382 U.S. 323, 328 (1966).

With this goal in mind and pursuant to Rule 3012 of the Federal Rules of Bankruptcy Procedure (hereinafter "FRBP") whereby "[t]he court may determine the value of a claim secured by a lien on property in which the estate has an interest, on motion of any

-4-

1 party in interest and after a hearing on notice to the holder of
2 the secured claim and any other entity as the court may direct,"
3 the debtors request that this Court determine the value of the
4 subject property to be $575,000.00.    Please see Fahimdejban
5 Declaration, **Exhibit "A"**, attached hereto.
6     FRBP 3012 implements Section 506(a) of the Bankruptcy Code
7 with respect to valuation of a secured claim in order to determine
8 the extent to which it is secured and the extent to which it is
9 unsecured.  The debtor seeks to extinguish the claimant's lien to
10 the extent permitted under Sections 506(a), 1322(b)(2) and 1325 by
11 so providing in the debtor's plan.
12 **B.**    **The debtor seeks a determination of the extent of the secured**
13       **claim held by Respondent**.
14     Pursuant to 11 U.S.C. §506(a), "[a]n allowed claim of a
15 creditor secured by a lien on property in which the estate has an
16 interest,...is a secured claim to the extent of the value of such
17 creditor's interest in the estate's interest in such
18 property,...and is an unsecured claim to the extent that the value
19 of such creditor's interest...is less than the amount of such
20 allowed claim."
21     In other words, Section 506(a) separates an undersecured
22 creditor's claim into two parts: a secured claim to the extent of
23 the value of the collateral; and an unsecured claim for the balance
24 of the claim.
25     Additionally, 11 U.S.C. §506(d) states that, "To the extent
26 that a lien secures a claim against the debtor that it is not an
27 allowed secured claim, such lien is void."
28     Section 506 is a section of general applicability and a

-5-

1  Chapter 13 case allows bifurcation of a claim into secured and
2  unsecured portions. Wilson v. Commonwealth Mortgage Corp., 895
3  F.2d 123, 22 C.B.C 561 (3rd Cir. 1990).
4     Since the total of the consensual mortgage lien of Litton, the
5  first trust deed holder, is undersecured (as the secured value is
6  greater than the value of their security interest), necessarily,
7  the second trust deed holder's interest held by Respondent is
8  totally unsecured.

C. **A wholly unsecured mortgage lienholder's rights may be modified under 11 U.S.C. §1322(b)(2).**

11  Many courts, even prior to the passage of the Reform Act of
12  1994, had already held that Nobleman v. American Savings Bank, 13
13  S.Ct. 2106 (1993) was inapplicable when senior liens were in excess
14  of the fair market value of the property. Therefore, the instant
15  case would fall outside the protection otherwise afforded by
16  Nobleman, because claimant's lien is wholly unsecured.
17     The passage of the Bankruptcy Reform Act of 1994 and the
18  subsequent passage and enactment of the Bankruptcy Abuse Prevention
19  and Consumer Protection Act of 2005 (BAPACPA) did not change the
20  ability of lien stripping of a wholly unsecured creditor. It
21  merely provided that a loan which fully matured prior to the filing
22  of the Chapter 13 petition, or a loan which matures during the life
23  of the plan, may be paid through the plan. 11 U.S.C. § 1322(b)(2).
24     Under Nobleman, a lien cannot be stripped if any portion of
25  the interest was secured. Thus, by implication, when a lien is
26  wholly unsecured, it can be stripped. Courts have consistently
27  distinguished between Nobleman and facts involving a wholly
28  unsecured lien holder. In fact, most reported decisions have

rejected the proposition that Nobleman prohibits modification of a totally unsecured lien on a Chapter 13 debtor's principal residence. These Courts, along with the 9th Circuit Bankruptcy Appellate Panel, interpret Nobleman to require the existence of an allowable secured claim as the predicate for the protection from modification in 11 U.S.C. §1322(b)(2).

In the 9th Circuit Bankruptcy Appellate Panel Case, In re Lam, the Court held that:

> The Nobleman decision holding that section 1322(b)(2) bars a chapter 13 plan from modifying the rights of holders of claims, secured only by the debtor's principal residence, does not apply to holders of totally unsecured claims. The extension of the protections of section 1322 (b) to wholly unsecured lien holders is contrary to the provisions of the bankruptcy code allowing dischargeability of unsecured claims.

In In re Lam, 121 B.R. 36, 41 (9th Cir. B.A.P. 1997), the Lam court concurred with the holding of several cases that permitted modification of secured creditor's claims that were wholly unsecured. Id. At 41. See also, In re Zimmer, 313 f.3d (9th Cir. 2002).

Yet another California case has a similar holding to In re Lam. The Court in In re Geyer sustained the debtor's motion to avoid a lien brought under Bankruptcy Code Section 506(d) and held that a Chapter 13 debtor may strip off a lien on his or her primary residence when the lien holder's interest is totally unsecured, stating that:

> [T]he term 'secured claim' as used in section 1322(b)(2) has the same meaning as the term "secured claim" in section 506(a). Unless there is some equity to which the creditor's lien attaches, there is no allowed secured claim and no entitlement to the protection against modification contained in section 1322(b)(2). A chapter 13 debtor may 'strip-off' a lien on his or her primary

residence under the plan or under section 506(d) when the lien holder's interest is totally unsecured. <u>In re Geyer</u>, 203 B.R. 726, 729 (S.D. Cal. 1996).

The Court's ruling in the case at bar should be unaffected by the landmark Supreme Court case in <u>Nobleman</u>. In <u>Nobleman</u>, Justice Thomas held that Code Section 1322 (b)(2) prohibits splitting an undersecured home mortgage holder's claim into its secured and unsecured portions for purposes of confirmation of a Chapter 13 Plan. <u>Nobleman</u>, 13 S.Ct. 2106. Unlike the case at bar, in <u>Nobleman</u>, the lien to be stripped was the holder of the first deed of trust for $71,335.00, and the debtor's principal residence was worth $23,500.00. Thus, the bank's claim was at least partially secured by the debtor's home. In the case at bar, the lien to be voided is not the first but the second deed of trust. Further, there can be no reasonable contention that any part of the second deed of trust is secured. Thus, the facts, reasoning and holding of <u>Nobleman</u> are inapplicable to the case at bar.

Because Respondent possesses a wholly unsecured lien on the debtor's home and does not have an allowable secured claim, Respondent cannot seek protection from modification under 11 U.S.C. §1322 (b)(2) and the debtor may modify the claim and extinguish Respondent's lien.

In the case at bar, the real property to be retained in the Chapter 13 Plan was originally the debtor's principal residence. The value of the Property is only $575,000.00, yet the value of the first deed of trust is at least $990,000.00. See <u>Fahimdejban</u> Declaration, **Exhibit "A"** (valuation). Please also see, <u>Aguilar</u> Declaration, **Exhibit "A"**, attached hereto incorporating by reference Ocwen's billing statement and business record. Thus,

-8-

the secured interest of the second deed of trust is zero since there is absolutely no equity to which the second deed of trust can attach. Therefore, the second deed of trust should be extinguished, reconveyed, and treated as unsecured for purposes of the instant Chapter 13 proceeding.

D.  **In re Dewsnup is distinguished from lien stripping in the instant case.**

The Chapter 7 case <u>Dewsnup v. Tim</u>, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) has no application to this Chapter 13 case. The relevant cases are the Chapter 13 cases which Movant/Debtor cites above which turn on the way courts' interpretations of Section 1322(b)(2) of the Bankruptcy Code to mean that under Section 1322 (b)(2), a Chapter 13 plan may modify the rights of secured claims, other than a claim **secured** only by a security interest in real property that is the debtor's principal residence, and that this section, in light of Section 506(a), does not preclude modification by a Chapter 13 Plan of the rights of holders of unsecured claims; to wit, junior mortgages which are completely unsecured.

To this end, Justice Scalia, in his dissent in <u>Dewsnup</u>, points out the difference between lien stripping in a Chapter 7 case and lien stripping in a Chapter 13 case when he states that,

> Respondents assume, for example, that a debtor in a Chapter 13 cannot strip down a mortgage placed on the debtor's home,; but that assumption may beg the very question the Court answers today. True, Section 1322 (b)(2) provides that Chapter 13 filers may not "modify the rights of secured claims", that are "secured only by a security interest in real property that is the debtor's principal residence. But this can be and has been read, in light of Section 506(a), to prohibit modification of the mortgagee's rights only with respect to the operation of his claim that is deemed secured under the Code. <u>See</u>,

e.g., In re Hart 923 F.2d 1410, 1415 (CA 10 1991); Wilson v. Commonwealth mortgage Corp., 895 F.2d 123, 127 (CA3 1990). Dewsnup, 502 U.S. 410, 428, 112 S.Ct. 773, 784.

In Denver v. Internal Revenue Service, 164 B.R. 132 (C.D. Cal. 1994), Judge Fenning held that in spite of Dewsnup, stripping an IRS lien on a principal residence is permissible in a Chapter 11 case. The Court noted that while under Dewsnup, Chapter 7 debtors cannot use Section 506 to strip down liens on an undersecured claim, the Supreme Court specifically reserved the question as to the applicability of its ruling in Dewsnup to cases under the reorganization chapters. 164 B.R. 132, 133. In Denver, the Court discussed the issue of lien stripping in Chapter 13 cases and cited the 10th Circuit case of In re Hart wherein the Court reasoned:

> The dispositive issue in this case is whether Eastland's undersecured loan may be bifurcated into two claims by applying general principals of Section 506(a) to the mortgage and then protecting only the secured claim by provisions of Section 1322(b). We believe it can. 923 F.2d 1410, 1413 (10th Cir. 1991).

After citing In re Hart in Denver the Court went on to state that:

> If Section 506 does not permit debtors to bifurcate undersecured claims and strip down liens to their collateral value, then all secured creditors would be freed of any concern that debtors could reduce the amount of their liens while retaining property. If Congress did not intend to allow lien stripping in general in Chapter 13 cases, then why would it bother to draft the exclusionary language of Section 1322. As Justice Stevens' concurring opinion in Nobleman emphasizes, the legislative history of Section 1322(b)(2) reflects Congressional desire to provide special protections to residential lenders. 503 U.S. at ____, 113 S.Ct. At 2112. The threat must be lien stripping, because no other threat is evident. Denver v. Internal Revenue Service, 164 B.R. at 141.

**IV.**

**CONCLUSION**

WHEREFORE, based on the foregoing statutory and decisional

- 10 -

1 | authority, the debtors respectfully request that the Court grant
2 | this motion and issue an Order that the **junior lien** held by
3 | Respondent, Countrywide Home Loan, Inc, its assignees, transferees
4 | and/or subsequent successors in interest, if any, is ordered
5 | extinguished and reconveyed upon the successful completion of the
6 | debtor's Chapter 13 plan and subsequent Chapter 13 discharge, and
7 | deemed an unsecured claim in the instant proceeding and that the
8 | debtor be excused from making further payments under Respondent's
9 | note.

11 | Dated:    May 8, 2009          Respectfully Submitted,
12 |                                LAW OFFICES OF TODD J. ROBERTS
14 |                          By:   _____
15 |                                Todd J. Roberts
                                    Attorney for Debtor/Movant