**DECLARATION OF LEONARDA G. AGUILAR IN SUPPORT OF MOTION TO EXTINGUISH JUNIOR CONSENSUAL LIEN OF COUNTRYWIDE HOME LOANS, INC, et al.**

**U.S.B.C. CASE NO.: SV 09-12118 KT**

**I, LEONARDA AGUILAR,** declare:

I know the following facts to be true from my own personal knowledge, except those facts which are stated on information and belief and as to those facts I believe them to be true. I could and would competently testify under oath to the truthfulness of the following facts:

1. I am the debtor in the herein Chapter 13 Bankruptcy, case no. SV 09-12118 KT.

2. I am the owner of real property, a single family residence the debtor's primary residence, a single family residence located at 13781 Eldridge Avenue, Sylmar, CA 91342 (the "subject property") more particularly described as:

**The Maclay Rancho NW 172.87 FT of SE 1037.23 FT of NE 630 FT(EX of ST) APN: 2503-010-029**

3. I purchased the subject property in or around April, 2006. The subject property is my primary residence.

4. The First Mortgage on the subject property is held by Ocwen Loan Servicing, LLC (hereinafter "Ocwen") secured by a First Deed of Trust under loan number 0020091252. A true and correct copy of Ocwen's most recent billing statement and business record in my possession which I personally received in the mail dated December 17, 2008 reflecting a principal balance of $990,732.14 along with a true and complete copy of the first 3 pages of Ocwen's Deed of trust is incorporated by reference herein as **Exhibit "A."**

I do not dispute that my loan balance is $990,732.14.

5. The Second Mortgage/ junior lien on the subject property is held by Countrywide Home Loan, Inc. (hereinafter "Respondent") secured by a junior Deed of Trust under loan number 131139998. A true and correct copy of Respondent's most recent billing statement and business record I personally received in the mail dated February 20, 2009, reflecting a total pay off balance of $119,969.76 is attached hereto and is incorporated by reference herein as **Exhibit "B."**

6. On or about March 11, 2009, I hired an California licensed appraiser, Shahram Fahimdejban who conducted a physical inspection of the subject property and prepared an appraisal which I later reviewed.

7. The report noted that the value was $575,000.00. I concur and defer to his expert opinion as to the valuation of the subject property.

8. I am respectfully requesting the court to determine the value of the subject property to be $575,000.00 and that the secured status of the Respondent's claim be deemed to be wholly unsecured and therefore subject to being extinguished upon completion of my proposed Chapter 13 plan and subsequent Chapter 13 discharge.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and complete to the best of my knowledge. Executed at Los Angeles, California on this 8th day of May, 2009.

L Guadalupe Aguilar

Leonarda G. Aguilar, Debtor

# EXHIBIT "A"



OCWEN

Ocwen Loan Servicing, LLC
P.O. Box 785063
Orlando, FL 32878-5063
Do not send correspondence or payments to the above address.

NC Permit No. 3946

**CUSTOMER RELATIONS 1-800-746-2936**

*Your call may be recorded for the coaching and development of our associates.*

## Account Statement

**Account Number:** 0020091252
**Account Statement Date:** 12/17/2008
**Property Address:**
13781 Eldridge Avenue
Sylmar CA 91342
PAGE 1

DELQ

09/17/08 09:00 0106286 20081218 8L450127 REG-STMT 1 OZ DOM 8L45010000* 146951 MS

LEONARDA G AGUILAR
13781 ELDRIDGE AVENUE
SYLMAR CA 91342-1764

## Account Information

| | |
|---|---|
| * Current Principal Balance: | 990,732.14 |
| Interest Rate: | 7.22870% |
| Next Payment Due Date: | 07/01/2008 |
| Escrow Advance Balance: | 8,275.86- |
| Interest Paid Year-To-Date: | 41,993.37 |
| Taxes Paid Year-To-Date: | 15,285.27 |
| Beginning Principal Balance: | 1,000,422.60 |
| Principal Reductions Year-To-Date: | 6,642.07 |
| Negative Amortization/Principal Adj Year-To-Date: | 3,048.39- |
| Beginning Escrow Balance: | .00 |
| Escrow Deposits/Adjustments Year-To-Date: | 9,610.41 |
| Escrow Disbursements/Adjustments Year-To-Date: | 17,886.27- |
| Recently Assessed Amounts: | |
| 12/11/08 Property Inspection Fee: | 10.50 |

*This is the principal balance only, not the amount required to pay your account in full.

## Details of Amount Due

| | |
|---|---|
| Current Amount Due: | |
| Principal: | 1,015.78 |
| Interest: | 5,932.14 |
| Escrow: | 1,469.65 |
| Current Amount Due by 01/01/09: | 8,417.57 |
| Past Due Amount: | |
| Principal: | 5,968.24 |
| Interest: | 35,719.28 |
| Escrow: | 5,032.34 |
| Past Due Amounts DUE IMMEDIATELY: | 46,719.86 |
| Assessed Fees/Expense Outstanding: | |
| Late Charges: | 1,737.00 |
| Prev-Returned Check Fee: | 25.00 |
| Prev-Certified Mail Cost: | 21.17 |
| Curr-Property Inspection Fee: | 10.50 |
| Prev-Property Inspection Fee: | 21.00 |
| Prev-Property Valuation Expense: | 109.00 |
| Prev-Title Search: | 1,169.00 |
| Total Fees/Expense Outstanding: | 3,092.67 |
| Total Amount Due: | 58,230.10 |

## Recent Account Activity

| Date | Description | Principal | Interest | Escrow | Optional | Late Charges | Fees/ Other | Suspense | Total |
|---|---|---|---|---|---|---|---|---|---|
| 11/18/08 | Tax Disbursement LOS ANGELES COUNTY | .00 | .00 | 7767.90- | .00 | .00 | .00 | .00 | 7767.90- |

**We may report information about your account to credit bureaus. Late Payments, missed payments, or other defaults on your account may be reflected in your credit report. To obtain information about your rights under the Fair Credit Reporting Act go to www.ftc.gov/bcp/conline/edcams/credit.**

## Important Messages

Our records indicate that your loan is in foreclosure. Accordingly, this statement may be for informational purposes only. Payments received are to be applied in accordance with your mortgage note. Payments will be first applied to bring your loan contractually current. Any additional funds received will be applied to outstanding fees and advances prior to being applied to principal.

Additional accountings may be requested by contacting Customer Service.

"A-1"

ACCIDENTS HAPPEN EVERYDAY. BE PREPARED TO PROTECT YOUR HOME AND FINANCIAL SECURITY. CALL 1-800-348-7569 TO ENROLL IN ACCIDENTAL DEATH AND DISABILITY INSURANCE.

**IF YOU ARE CURRENTLY IN BANKRUPTCY OR IF YOU HAVE FILED FOR BANKRUPTCY SINCE OBTAINING THIS LOAN, PLEASE READ THE BANKRUPTCY INFORMATION PROVIDED ON THE BACK OF THIS STATEMENT.**

FOLD AND DETACH HERE

PLEASE DETACH AND RETURN BOTTOM PORTION WITH PAYMENT IN THE ENCLOSED ENVELOPE WITH ADDRESS VISIBLE.
PLEASE DO NOT SEND CORRESPONDENCE WITH YOUR PAYMENT - ALWAYS WRITE YOUR ACCOUNT NUMBER ON YOUR CHECK.

FOLD AND DETACH HERE

Recording Requested By /
Return To
CREVECOR MORTGAGE INC.
1150 HANLEY INDUSTRIAL CT.
BRENTWOOD, MO 63144
(800) 860-0878
ATTN CREVE COR MORTGAGE INC.

Prepared By

CREVECOR MORTGAGE INC.
1150 HANLEY INDUSTRIAL CT.
BRENTWOOD, MO 63144
(800) 860-0878

[Space Above This Line For Recording Data]

# DEED OF TRUST

AGUILAR
Loan # 247963
PIN
MIN 100209800002479632

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21 Certain rules regarding the usage of words used in this document are also provided in Section 16

**(A) "Security Instrument"** means this document, which is dated APRIL 25, 2006, together with all Riders to this document

**(B) "Borrower"** is Leonarda G Aguilar, a single ~~man~~ WOMAN Borrower is the trustor under this Security Instrument.

**(C) "Lender"** is CREVE COR MORTGAGE INC. Lender is a CORPORATION organized and existing under the laws of MISSOURI Lender's address is 1150 HANLEY INDUSTRIAL CT., BRENTWOOD, MO 63144

**(D) "Trustee"** is FIRST AMERICAN TITLE

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P O Box 2026, Flint, MI 48501-2026, tel (888) 679-MERS

**(F) "Note"** means the promissory note signed by Borrower and dated APRIL 25, 2006 The Note states that Borrower owes Lender NINE HUNDRED FIFTY THOUSAND AND 00/100 Dollars (U S $950,000.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than JUNE 1, 2036

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property"

**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower The following Riders are to be executed by Borrower [check box as applicable]

☒ Adjustable Rate Rider
☐ Balloon Rider
☐ 1-4 Family Rider
☐ Condominium Rider
☐ Planned Unit Development Rider
☒ Other(s) [specify] DB - INTEREST ONLY, FLOOR
☐ Second Home Rider
☐ Biweekly Payment Rider

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are

Certified To Be True, Correct, And Complete Copy Of The Original
Northwest Title Corp.
By



"A-2"

imposed on Borrower or the Property by a condominium association, homeowners association or similar organization
**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers
**(M) "Escrow Items"** means those items that are described in Section 3
**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property, (iii) conveyance in lieu of condemnation, or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property
**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan
**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U S C § 2601 et seq ) and its implementing regulation, Regulation X (24 C F R Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter
As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA
**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS This Security Instrument secures to Lender (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note, and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY of LOS ANGELES
which currently has the address of 13781 ELDRIDGE AVENUE SYLMAR, California 91342 ("Property Address")

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property" Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property

UNIFORM COVENANTS Borrower and Lender covenant and agree as follows
**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note Borrower shall also pay funds for Escrow Items pursuant to Section 3 Payments due under the Note and this Security Instrument shall be made in U S currency However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender (a) cash, (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity, or (d) Electronic Funds Transfer

Certified To Be a True, Correct, and Complete Copy Of The Original
North Hills Escrow Co.
BY



"A-3"

247963

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15 Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority. (a) interest due under the Note, (b) principal due under the Note, (c) amounts due under Section 3 Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property, (b) leasehold payments or ground rents on the Property, if any, (c) premiums for any and all insurance required by Lender under Section 5, and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10 These items are called "Escrow Items" At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time Any such waiver may only be in writing In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9 If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest

Certified to be a True and Complete Copy of the Original
North Hills Escrow Corp.
By



"A-4"

# EXHIBIT "B"



**Countrywide Bank**

SERVICED BY COUNTRYWIDE

Customer Service
MSN SV-26B
PO Box 10229
Van Nuys, CA 91410-0229

Billing Cycle
01/01/2009 - 01/31/2009

**Account Number 131139998**

Property address
13781 Eldridge Ave

# HOME EQUITY LOAN STATEMENT

0041208 01 AV 0.324 **AUTO T2 0 6251 91342-1764
H HO AG ..1..2......1... 800 IN 1 P41249 DT101

LEONARDA G AGUILAR
13781 Eldridge Ave
Sylmar CA 91342-1764

## IMPORTANT NOTICE



### This Statement Includes a Past-Due Amount.

Please send a payment immediately. Access to your credit line may be affected while the past-due amount remains outstanding. If you have already sent a payment, please accept our thanks, and disregard this notice.

### Make Past-Due Payments a Thing of the Past.

MortgagePay on the Web allows YOU to make your monthly mortgage or Home Equity Line of Credit (HELOC) loan payment online each month. This service is free before or during the first third of your grace period. However, if allowed by applicable law, a $3.00 service charge will apply, if your online mortgage payment is made during the second third of your grace period and a $6.00 service charge will apply during the last third of your grace period. Check out our demo, at https://customers.countrywide.com, to see just how easy it is.

### Counseling Programs

Homeownership counseling programs are offered by both Countrywide Home Loan Servicing LP and by non-profit organizations that are approved by the Department of HUD. These non-profit homeownership counseling programs may be able to assist you concerning your delinquent loan. For Counseling Agencies in your area, call 1-800-569-4287 or 1-800-877-8339 (TDD for hearing impaired). For eligible applicants, completion of a counseling program is required for insurance pursuant to section 203 of the National Housing Act (12 U.S.C. 1709).

## ACCOUNT SUMMARY

**Loan Summary**

| Item | Amount |
|---|---|
| Credit limit | $120,000.00 |
| Average daily balance | $119,969.76 |
| Corresponding **ANNUAL PERCENTAGE RATE** | **5.9500%** |
| Daily periodic rate | 0.01630% |
| Historical **ANNUAL PERCENTAGE RATE** | **5.9500%** |
| Days in Cycle | 31 |
| **FINANCE CHARGE** | **$606.26** |

**Payment Details**

| Item | Amount |
|---|---|
| Periodic **FINANCE CHARGE** | **$606.26** |
| Post-petition amount unpaid | $23,619.66 |
| **Minimum payment due: 02/20/2009** | **$24,225.92** |

(see next page for transaction details)

If you fail to make your Minimum Payment Due within the number of days set forth below in your payment coupon, from the Payment Due Date, you will be charged a late fee of 5% of the late payment.

## PAYMENT

We will credit your account the same day we receive your payment on a banking day (not including Saturday) prior to 3PM Pacific Time. Payments made on your account by check or other non-cash method, will be included in your "Available Credit" 10 days from receipt of payment. We may assess a late fee as described in your credit agreement if we do not receive your payment within 15 days of the payment due date. Good credit relies on the timely receipt of your payment. If your account is delinquent, we may submit a negative credit report to the credit reporting agencies.

**As a reminder, failure to make your minimum payment by the payment due date could result in suspension or termination of your credit privileges.**

Account number **131139998** **(2)**
Leonarda G Aguilar
13781 Eldridge Ave

**HOME EQUITY LOAN**

**Payment due Feb 20, 2009 $24,225.92**

**SEE OTHER SIDE FOR IMPORTANT INFORMATION** 6251

Additional Principal

N/A

Other

Check total

**Countrywide**
PO BOX 10287
VAN NUYS CA 91410-0287

"B-1"

131139998200002422592000000000